### CONROY v. PENN ELECTRICAL & MFG. CO.

(Circuit Court, W. D. Pennsylvania, District Court. February 5, 1907.)

#### No. 21.

1. PATENTS—SUBJECT OF PATENTS—FUNCTION OF MACHINE.

   The Conroy patent, No. 723,139, for a method of ornamenting glass, which consists in chipping and scalloping the edges of plate glass for small mirrors by the use of a machine, is void as merely being for the function of the machine in the manufacture of an old product; the same work having previously been done by hand and by practically the same mechanical process.

2. SAME—PUBLIC USE—MACHINE FOR SHAPING EDGES OF GLASS.

   The Conroy patent, No. 735,949, for a machine for shaping or chipping the edges of glass articles, discloses invention, and is not invalid for public use because the machine was in fact used for more than two years prior to the application; it being shown that, while the machine was fairly successful, and its product was sold, the purpose of its use was experimental, and it was during such time being perfected by the inventor and was kept under lock and key and as far as possible from the knowledge even of the factory workmen who were not engaged in its operation. Also, *held* infringed.

In Equity. On final hearing.

Christy & Christy, for complainant.

J. M. Nesbit, for respondent.

BUFFINGTON, Circuit Judge. This bill charges infringement of both claims of method patent No. 723,139 for ornamenting glass,

granted to John M. Conroy March 17, 1903. This patent was applied for October 22, 1902. It also charges infringement of claims 1, 4, 5, 6, and 7 of patent No. 735,949, for ornamenting glass, granted John M. Conroy August 11, 1903. It was applied for December 31, 1902. The application for the earlier patent originally included both method and machine claims. On suggestion of the office, the machine claims were withdrawn and made the subject of a later application on which the second patent issued. Validity of the former is challenged on the ground that it is an attempt to patent the mere function of a machine. If such be the case, the patent, under well-recognized principles (Risden v. Medart, 158 U. S. 81, 15 Sup. Ct. 745, 39 L. Ed. 899), must be held void.

, The patents refer to the chipping and scalloping the edges of plate glass for small mirrors. Previous to these patents this was done by hand. A piece of plate glass of the desired size, diamond scored on the upper side about an eighth of an inch from the edge, was firmly held by an operator with one hand to overlap the edge of a table. In the other hand the operator held a chipping tool. This consisted of a handle provided with a bifurcated prong somewhat wider than the glass plate. The longer arm of the prong was on the lower side of the plate. A sharp, quick downward stroke of the tool forced the inner end of the lower prong against the lower side of the plate, and the upper prong against the upper edge of the plate. This chipped or cut out scallops back to the scored line. The tool was then moved along the plate, and the operation rapidly repeated. It resulted in a uniform succession of scallops along the plate. The advance in hand chipping now dispenses with scoring. The invention in this case consisted in supplanting hand chipping by machine chipping. The process was: The edge of a plate of glass, supported on a firm rest or table, was presented at an inclined angle to engage a row of projecting pins equally spaced diagonally across the outer surface of a revolving band wheel. The impact of the successive pins made a corresponding successive series of chipped uniform scallops along the edge of the plate. The origin of the device is thus described by complainant's witness Horst: He was asked:

"Do you see the Rieseck drum here before you? A. Yes, sir. It is marked 'Defendant's Exhibit; Rieseck Drum.' Q. You have said that this first machine was built in February, 1899. Do you recall the circumstances under which this matter of the chipping machine first came to your attention? A. As I remember it, I was teaching a boy to chip glass by hand, when Mr. Conroy, he stopped to see what we were doing, when I asked him if he couldn't make a machine to chip glass by. He studied awhile on it, examined the hand tool, and then said he thought it could be done with a drum-pulley. I asked him how, and he said he would let me know later. In about an hour I was called to the office by Mr. Conroy, and he there explained to me that he was going to Peter Rieseck and see if he could get an iron pulley that would answer the purpose. He explained that he would have holes drilled in it, and then we could try it. In a day or two the pulley, and a pair of pillow-blocks came to the factory. Then he had our carpenter at that time, Mr. David Chambers, build a frame. After the frame was built I mounted the drum. Mr. Conroy went to the Labelle Steel Works and got two rods of steel. I think they were five-sixteenths steel rods. I then cut the pins into lengths of about two inches, filed them, and fit them in the holes."

The plan devised by Mr. Conroy was at once embodied in a machine. Of this Mr. Conroy says:

"Q. Were you able to successfully chip glass while the drum purchased February 23, 1899, was in use? A. We succeeded in chipping some—making some good work—but numerous difficulties arose that we had to meet at different times. One of these was in the drum itself. The metal in it was too light. The pins couldn't be held in position exactly. I didn't know what was the matter with it for awhile. Some pieces would come out all right, and others would not; but I found finally that the metal was too light in that drum, and that was one cause of trouble. But these difficulties that I am speaking of were mechanical difficulties. They didn't alter the invention at all. The invention as it is to-day is as it presented itself to me at the start. These mechanical difficulties had to be overcome in its use."

From this it will be seen that the method and the machine were simultaneously evolved, and that what was devised was a machine by which a well-recognized article, theretofore hand made, could now be machine made. The process substituted a machine made for a hand made article, made it cheaper, quicker, and somewhat more uniform. The method then is simply the novel function of the machine, and not the novelty of its product; nor, indeed, do we find any difference in the mechanical process employed in the hand and machine operation other than that incidental to change from hand to machine work. Indeed, complainant's expert, in discussing the question whether there is a blow in machine operation and simply a tortional pressure in the hand process, virtually concedes there is no functional difference, saying: "It is not, however, in my judgment, a matter of any material consequence." In Rubber Company v. Goodyear, 76 U. S. 796 (19 L. Ed. 566), it was held:

"A machine may be new, and the product or manufacture proceeding from it may be old, in that case the former would be patentable, and the latter not. The machine may be substantially old, and the product new. In that event, the latter, and not the former, would be patentable. Both may be new, or both may be old. In the former case, both would be patentable. In the latter, neither. The same remark applies to processes and their results. Patentability may exist as to either, neither, or both, according to the fact of novelty, or the opposite. The patentability or the issuing a patent as to one in no wise affects the rights of the inventor or discoverer in respect to the other. They are wholly disconnected and independent facts. Such is the sound and necessary construction of the statute."

Now applying this general principle to the case in hand, it is very clear that, in view of the prior existence of chipped glass, and that the advance Conroy made was to devise a machine to make it, it is clear that, while such machine is patentable, the function of that machine, namely, making machine chipped glass, is not. To do so would thwart the object of the patent law, which is to promote, not retard, inventions. To use a homely illustration: Beef was chipped by hand. But no one would contend that when the first machine for chipping beef was made the inventor thereof could secure a patent for the process embodied in the machine. To do this would be to bar the way to every inventor who might devise some other machine for producing the common article of chipped beef. Such a construction of the patent laws would make them retard progress,

Upon consideration we are clear that patent No. 723,139 is void as simply being for the function of a machine devised to manufacture an old product.

Two alternative forms of machine illustrate the invention of machine patent No. 735,949; one the band wheel type referred to above, and the other a vertical reciprocating head mounted in guides and provided with a diagonal row of spaced pins on its face. These pins strike the glass as in the case of the preceding structure. The first claim is:

"In a machine for shaping the edges of glass articles, the combination of a carrier having a series of two or more pins secured to the carrier and spaced in the direction and transversely of the path of movement of the carrier so as to operate successively and at different points on the article, means for moving the carrier and a rest or bearing arranged to support the article adjacent to the edge to be operated on, substantially as set forth."

The respondent's alleged infringing structure No. 1 is a reorganized shear. A number of projecting pins are spaced and staggered on a pivoted arm in the direction and transversely of the arms' path of movement. The result of this arrangement is that the pins operate successively on the edge of the plate of glass which rests on a support and is inclined at an angle to receive the impact of the pin. The oscillating pin-carrying arm is a carrier, and differs from the reciprocating carrier of complainant's second structure only in the fact that it turns on a pivot, instead of sliding in guides. So far as functional and mechanical means go, it is an obvious mechanical alternative for complainant's reciprocating head. We are therefore of the opinion it infringes.

It is contended, however, that the patent is void because not taken out within two years after the machine was put in public use. The question is not without difficulty, but upon consideration we are of opinion the use of the machine down to February, 1901, was experimental. Chipping glass by hand was a comparatively new art, and we find the device of the patentee was the first successful application of machinery to that art. A number of serious obstacles were encountered in the operation of the machine, and, while it was in a measure successful, and its product was sold, yet the testimony also shows that during this entire period the patentee encountered difficulties and was persistently laboring to perfect the machine. These troubles could only be discovered by the use of the machine, and attempts to remedy them when discovered necessitated still further use. During this whole period the machine was kept under lock and key in a factory to which the public had no access, and efforts were made to prevent the other factory workmen, not engaged in its operation, from seeing it. True, during this time the product of the machine was sold, but the sale was the incident, and experiment and improvement the main object of such use. It will also be noted that in two particulars at least the patent was based on matters developed by these experiments, viz., adjustment of the rest block laterally to enable the chipping of different thicknesses of glass and its adjustment horizontally so as to allow the pins to strike the edge of the glass below the axis of revolution and as the pin was moving away from the bar.

In view of the period up to February, 1901, being wholly experimental, we are of opinion application for the patent was made in due time.